**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 11-9321 EAG |
| ELI J. TILEN-BERNABE and MARTA ISABEL SOUFFRONT-VICENTE, | CHAPTER 13 |
| DEBTORS. | FILED & ENTERED ON 10/02/2013 |

**OPINION AND ORDER**

The Department of Treasury of the Commonwealth of Puerto Rico ("Hacienda") filed an amended proof of claim, numbered 8-3, for unpaid taxes in the total amount of $101,103.62, consisting of a secured portion of $27,753.34, an unsecured priority portion of $67,229.13, and a general unsecured portion of $6,121.15. [Claims Register No. 8-3; "POC 8-3".] Debtors Eli J. Tilen Bernabe and Marta Isabel Souffront Vicente (the "debtors") objected to the priority portion of POC 8-3. [Docket No. 32.] The parties then filed cross motions for summary judgment. [Docket Nos. 64 & 65.] For the reasons stated below, Hacienda's motion for summary judgment is hereby denied and the debtors' motion for summary judgment and objection to the Hacienda's POC 8-3 are granted.

**<u>Jurisdiction</u>**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the General Order of Referral of Title 11 Proceedings to United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. §157(b).

**Procedural Background**

The debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on October 29, 2011. [Docket No. 1.] Hacienda filed its first proof of claim on April 10, 2012, and subsequently amended it twice. [Claims Register Nos. 8-1, 8-2 & 8-3.] On June 20, 2012, the debtors filed an objection to the priority of portion of POC 8-3 on the ground that no evidence was provided to support its priority status. [Docket No. 32.] Hacienda, on August 20, 2012, filed an opposition to the objection, and both parties have since replied. [Docket Nos. 39, 40 & 51.]

A hearing was held on September 19, 2012, at which the court granted the parties a term to file dispositive motions and a joint statement of material facts. [Docket No. 53.] On February 1, 2013, Hacienda and the debtors filed a joint statement of uncontested material facts. [Docket No. 63.] And on that same date, both parties filed their respective motions for summary judgment. [Docket Nos. 64 & 65.] On February 27, 2013, the debtors filed their opposition to Hacienda's motion for summary judgment. [Docket No. 68.] On March 1, 2013, Hacienda filed its opposition to the debtors' motion for summary judgment. [Docket No. 69.]

**Uncontested Facts**

The following facts are uncontested pursuant to Fed. R. Civ. P. 56 and D.P.R. Civ. R. 56, made applicable to this contested matter by Fed. R. Bankr. P. 9013(c) and 7056 and P.R. LBR 1001-1(b) and (d):

Mr. Tilen started to work for the Municipality of Mayagüez in 2005. [Joint Statement of Uncontested Material Facts ("Joint Statement"), Docket No. 63, ¶ 1.] Having accrued significant tax debt, Mr. Tilen signed on November 3, 2005 a document entitled Request and Approval of

Payment Plan for the Payment of Taxes (the "Payment Plan"). [Joint Statement, Docket No. 63, ¶ 2; Cert. Trans. to Joint Exhibit 1, Docket No. 75-1.] The Payment Plan covered tax debt for assessed years 1995 to 2004; it required that Mr. Tilen pay $500 per month for 59 months from December 1, 2005 to December 1, 2010; at which time, he had to make a final payment for the outstanding balance of the tax debt. [Joint Statement, Docket No. 63, ¶¶2-3; Cert. Trans. to Joint Exhibit 1, Docket No. 75-1.] However, the Payment Plan also allowed Mr. Tilen to make smaller payments in the amount of $300.00 per month until his economic situation improved. [Joint Statement, Docket No. 63, ¶ 2; Cert. Trans. to Joint Exhibit 1, Docket No. 75-1.]

On March 10, 2007, Mr. Tilen stopped making payments. [Hacienda's Motion for Summary Judgment, Docket No. 64 at 13; Debtors' Legal Memorandum, Docket No. 65 at 2.] On June 2, 2008, Hacienda sent the Municipality of Mayagüez a Notification of Debt ordering the municipality to garnish Mr. Tilen's wages ("Notice of Garnishment"). [Joint Statement, Docket No. 63, ¶ 4; Cert. Trans. to Joint Exhibit 2, Docket No. 75-1.] The Notice of Garnishment required monthly deductions in the amount of $500 from Mr. Tilen's paychecks for 35 months, starting in July 2008, and a final payment of $73,784.33, to cover tax debt assessed for years 1995 to 2006. [Joint Statement, Docket No. 63, ¶¶ 3 & 4; Cert. Trans. to Joint Exhibit 2, Docket No. 75-1.] The debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on October 29, 2011. [Docket No. 1.]

**Summary Judgment Standard**

Pursuant to Rule 56, made applicable to this contested matter by Fed. R. Bankr. P. 9013(c) and 7056, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue of fact exists as to any material fact" and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. P.R. Tel. Co.,</u> 110 F. 3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issues exists" that would warrant the court's denial of the motion for summary judgment. <u>McCarthy v. Northwest Airlines</u>, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." <u>Id</u>. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. <u>Id</u>. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" is it is potentially outcome-determinative. <u>See</u> <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F. 3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial

process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

**Legal Analysis**

Under section 507(a)(8),[1] unsecured claims of governmental units are entitled to priority to the extent that such claims are for "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition" if the tax was assessed within 240 days before the date of the filing of the petition, exclusive of "any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days." 11 U.S.C. § 507(a)(8)(A)(ii)(I). "The reason for according priority treatment to taxing authorities is because taxing authorities, unlike most other creditors, did not voluntarily extend credit to the debtor." 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 507.11[1][b] (16th ed. 2013).

The Bankruptcy Code does not define an "offer in compromise." However, bankruptcy courts have used the definition of offer in compromise found in the Internal Revenue Code and Treasury Regulations to construe that same term in section 507(a)(8). See e.g. In re Serapio Laureano Molina, 487 B.R. 73, 76-77 (Bankr. D.P.R. 2013) ("An offer in compromise pursuant

---

[1] All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

to 26 U.S.C. § 7122© and (d) is 'an administrative proposal, evaluation, and negotiation, to determine if the IRS will accept a longer payment period, or a lesser amount than the full tax due.'"). An offer to compromise a tax debt under 26 U.S.C. § 7122 "must be made in writing, must be signed by the taxpayer under penalty of perjury, and must contain all of the information prescribed or requested by the Secretary." 26 C.F.R. § 301.7122-1(d). An offer to compromise is not deemed accepted until the IRS issues a written notification of acceptance to the taxpayer or the taxpayer's representative. 26 C.F.R. § 301.7122-1(e). However, the court need reach the issue of whether the Payment Plan is an offer in compromise only if it finds that the Notice of Garnishment extended the Payment Plan, as Hacienda argues.

Because the debtors filed for bankruptcy relief on October 29, 2011, an offer in compromise had to be "pending or in effect" on February 1, 2011 to be entitled to priority treatment under section 507. Hacienda argues that the Payment Plan was an offer in compromise and that it was extended by the Notice of Garnishment on June 2, 2008. Since Hacienda was still garnishing Mr. Tilen's wages in February 2011 under the Notice of Garnishment, Hacienda further argues that the Payment Plan, as extended by the Notice of Garnishment, falls within the 270-day period of section 507(a)(8)(A)(ii)(I) and, thus, a portion of POC 8-3 is entitled to priority treatment.

Hacienda bases its argument on another contention: that the Payment Plan included a clause that allowed Hacienda to seek any remedy available to it under the laws of Puerto Rico in the event of a default in payments.[2] Ultimately, however, the court concludes that, even

---

[2] The debtors deny that the second page of the Payment Plan, which contains the default clause, was part of the agreement signed by Mr. Tilen. The debtors contend that the second page was not signed by Mr. Tilen, was not part of the Payment Plan, and is merely a letter from Hacienda accepting the Payment Plan. [Docket No. 65, ¶¶14-15.] This fact is not material for disposing by summary judgment this contested matter.

6

accepting as true this last factual contention, the Notice of Garnishment is not an extension of the Payment Plan. The extension argument fails for two reasons.

First, the Notice of Garnishment was neither voluntary nor signed by the taxpayer, and thus does not comply with the requirements of the Internal Revenue Code for offers in compromise. See Fitzgerald v. Comm'r of Internal Revenue, 135 T.C. 344, 351 (2010) (a proposal not submitted in writing by a taxpayer cannot be an offer in compromise). Rather, the Notice of Garnishment was unilaterally imposed on Mr. Tilen by Hacienda when it exercised its rights under Article 9(j) of Act No. 230 (P.R. Stat. Ann. tit. 3, § 283h(j)) and ordered the Municipality of Mayagüez to make deductions to his paychecks. And the Notice of Garnishment makes no reference to the Payment Plan. Rather, it plainly states that Hacienda is exercising its rights under P.R. Stat. Ann. tit. 3, § 283h(j) to garnish Mr. Tilen's wages.

Second, the terms of the Payment Plan are significantly different from those under the Notice of Garnishment. The Payment Plan included taxes assessed for the years 1995 to 2004. The Notice of Garnishment included taxes assessed for the years 1995 to 2006. Also, the Payment Plan required Mr. Tilen to make monthly payments of $300.00 each month for five years, starting in December 2005. But the Notice of Garnishment imposed a $500.00 deduction on his paycheck each month for three years, starting in July 2008. The terms and conditions of payment in the two documents are too incompatible to consider them both one, extended agreement.

The Payment Plan terminated on March 10, 2007, when Mr. Tilen stopped making the required monthly payments to Hacienda. Hacienda then pursued its rights under P.R. Stat.

Ann. tit. 3, § 283h(j) by sending the Notice of Garnishment to the Municipality of Mayagüez. Even had Mr. Tilen complied with the terms of the Payment Plan, the plan would have ended on December 12, 2010. Having concluded that the Notice of Garnishment did not extend the Payment Plan, the court further holds that there was no offer in compromise "pending or in effect" during the 270 days prior to the bankruptcy filing. Thus, the tolling provision of section 507(a)(8)(ii)(I) is not triggered and the priority portion of POC 8-3 is not entitled to priority treatment under section 507(a)(8).

The motion for summary judgment filed by the Treasury Department of Puerto Rico [at Docket No. 64] is denied. The debtors' objection to Proof of Claim 8-3 [at Docket No. 32] and the motion for summary judgment [at Docket No. 65] are granted. Proof of Claim 8-3 is, thus, allowed in the amounts of $27,753.34 as secured and $73,350.28 as general unsecured.

SO ORDERED.

In Ponce, Puerto Rico, this 2nd day of October, 2013.

Edward A. Godoy
U.S. Bankruptcy Judge